## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO

**LAMAR ANTWAIN DUERSON**                                               **PLAINTIFF**

**v.**                                                           **CIVIL ACTION NO. 4:06CV-P0003-M**

**DEPUTY MARROW,** *et al.*                                           **DEFENDANTS**

### MEMORANDUM OPINION

The plaintiff, Lamar Antwain Duerson, filed this civil rights action under 42 U.S.C. § 1983 ("§ 1983"). The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the Court must dismiss this action for failure to state a claim.

### I. FACTUAL BACKGROUND

The plaintiff, Lamar Antwain Duerson, is a pretrial detainee currently being held at the Henderson County Detention Center. Duerson filed this § 1983 action against the following Henderson County Detention Center employees: Deputy Jailer Marrow, Sgt. Hammer, Lt. Snodgrass, Major Donlapp, and Jailer Ron Harrington. Duerson sues the defendants in both their individual and official capacities, seeking money damages.[1]

Duerson alleges that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by serving him "a poorly prepared and unsanitary meal" on October 20, 2005. Duerson alleges that after the food trays had been passed out that night, he began eating his meal and discovered "a maggot crawling around in his food." Duerson

---

[1] Duerson listed the Henderson County Detention Center in the case caption but did not list it as a defendant in the body of his complaint. Thus, the Court is unclear whether Duerson intended include the detention center as a defendant. In any event, since all the defendants work at the Henderson County Detention Center and Duerson has sued them in both their individual and official capacities, the Court must construe this action as also brought against Henderson County regardless of Duerson's intent. *See infra* section III.A.

summoned Office Marrow and explained the situation to him. Officer Marrow then offered Duerson a different food tray. Duerson refused the offer because he believed that the substitute food tray came from the same batch of contaminated food as his first tray. Duerson requested to speak to Officer Marrow's shift supervisor. As requested, Sgt. Hammer went to Duerson's cell to discuss the incident. Sgt. Hammer also offered Duerson another food tray. Duerson again refused stating that he believed that the food was prepared in a single batch and was all contaminated. Duerson then asked to speak with the shift supervisor.

Sometime later that same evening, Lt. Snodgrass, the shift supervisor, asked Duerson to his office to discuss the incident further. Lt. Snodgrass explained to Duerson that he had investigated the situation and had determined that the maggot came out of a bad batch of wheat bread and would be remedied.[2] Lt. Snodgrass also attempted to offer Duerson a replacement food tray. Duerson again refused. Lt. Snodgrass then offered to provide Duerson with a "sack lunch." It is unclear whether Duerson accepted the "sack lunch" from Lt. Snodgrass.

Still quite upset by the incident, Duerson told Lt. Snodgrass that he wanted to speak with Jailer Ron Harrington when he arrived at the jail the next morning. The next morning, however, Duerson was taken to the "hole" from 6 a.m. to 12 p.m. Afterwards, Duerson was taken to the dentist for surgery. Because he was sedated and on pain medication, he had to remain in the "hole" for twenty-four hours.[3] During this time, Duerson again unsuccessfully requested to speak to Jailer Harrington about the maggot incident.

---

[2]Duerson apparently disagrees with Lt. Snodgrass's assessment because he points out in his compliant that he had white, not wheat, bread on his tray.

[3]Duerson does not appear to be alleging that his confinement in the "hole" was in retaliation for his complaint about the maggot. Rather, it appears that it was related to his dental surgery.

After being released from the "hole," Duerson filed a number of grievances concerning the maggot incident.[4] Eventually, he was allowed to speak with Major Donlapp. He explained the incident to her and again requested to speak to Jailer Harrington. Major Donlapp indicated that the incident had been resolved and that Duerson would not be permitted to speak with Jailer Harrington.

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, this Court must review the instant action. 28 U.S.C. § 1915A ("The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."); *McGore*, 114 F.3d at 604-05. Upon review, this court must dismiss "the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A(b).

A complaint may be dismissed as frivolous under § 1915A if it is premised on a nonexistent legal interest or delusional factual scenario. *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989). A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). In reviewing a complaint under this standard, a court must accept all

---

[4]Some of the grievances are general in nature and not do name the defendants specifically. Others name each defendant individually. Based on the documentation provided by Duerson, it appears that Duerson exhausted his administrative remedies as related to the October 20th incident prior to filing suit. Duerson also attached several other grievances to his complaint that pertain to issues other than the October 20th incident. Duerson's complaint, however, relates only to the October 20th incident. Accordingly, the Court disregarded these other grievances for the purposes of its initial review.

factual allegations contained in the complaint as true and must also construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "the duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And, this Court is not required to create a claim for the plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975); *see also* Fed. R. Civ. P. 8(a)(2). To command otherwise would require this Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.  ANALYSIS

### A.  Official Capacity Claims

In the instant action, Duerson has asserted a claim against the defendants in both their official and individual capacities. Where an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity for whom the individual works. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). In this case, Duerson's official capacity claims are deemed claims brought against Henderson County itself.

When a § 1983 claim is made against a municipality, this Court must analyze two distinct elements: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120 (1992). The Court will address the elements in reverse order.

In the seminal case *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978), the U.S. Supreme Court set forth the circumstances under which a municipality could be held liable in a § 1983 civil action. The Court stated:

> Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Monell*, 436 U.S. at 691. Locating a policy or custom ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Bd. of County Com'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 403-04 (1997) (citing *Monell*, 436 U.S. at 694).

To hold such a municipality accountable, therefore, a plaintiff must demonstrate that some official policy or custom caused an employee to violate the plaintiff's constitutional rights. *Deaton v. Montgomery County, Ohio,* 989 F.2d 885, 889 (6th Cir. 1993) ("In analyzing the specific language in § 1983, the court in *Monell* concluded that the language plainly imposes liability on a governmental entity that, under the color of some official policy, 'causes' an employee to violate another's constitutional rights."). The policy or custom "must be 'the moving force of the constitutional violation.'" *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th

Cir. 1994)(quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)(citation omitted)). Simply stated, a plaintiff must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)(quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987).

In the instant action, Duerson alleges precisely the opposite. He alleges that a policy existed, 501 KAR 3:100 E, that required defendants to serve him with "palatable" meals taking into account "food flavor, texture, and appearance." *Id.* He alleges that the defendants violated this policy by serving him a meal that contained a live maggot. Thus, his claim is that the defendants failed to follow their own constitutionally sound policies. This is not sufficient to state a cognizable cause of action against a county under § 1983. *Brown*, 520 U.S. at 406-07 ("That a plaintiff has suffered at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably."). Accordingly, Duerson's official capacity claims must be dismissed.

### B. Individual Capacity Claims

The Court must now consider whether Duerson has stated a cognizable § 1983 claim against any of the defendants in their individual capacities. In order to state a claim under § 1983, a plaintiff must allege both a violation of a right or rights secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42 (1988).

Duerson claims that by serving him a food tray containing a maggot the defendants violated his Eighth Amendment right to be free from cruel and unusual treatment. However, at

the time of the incident, Duerson was a pretrial detainee. When the constitutionality of pretrial detention conditions is in issue, the Eighth Amendment prohibition against cruel and unusual treatment has no application because the Eighth Amendment only applies to those convicted of crimes. *Butler v. Jewell*, 869 F.2d 1488 (6th Cir. 1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). "The protection afforded under the Eighth Amendment is however available to pretrial detainees under the Fourteenth Amendment." *Id.* Accordingly, the Court will analyze Duerson's Eighth Amendment claim as if he had brought it under the Fourteenth Amendment. The analysis is largely the same because in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care, the minimum standards required by the Due Process Clause of the Fourteenth Amendment are analogous to those required by the Eighth Amendment for convicted persons. *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

The Sixth Circuit has held that while a prisoner is constitutionally entitled to food that is nutritionally adequate for the maintenance of normal health, complaints about "the preparation or quality of prison food" are generally "far removed from Eighth Amendment concerns." *Cunningham v. Jones*, 567 F.2d 653 (6th Cir. 1977). When dealing with food quality and preparation most courts have held that the Constitution merely "requires that food be prepared in a manner that reasonably accords with sound sanitary procedures." *See Kennibrew v. Russell*, 578 F. Supp. 164, 168 (E.D. Tenn. 1983).

To state a constitutional violation for unsanitary food preparation a prisoner must do more than allege a single or isolated incident of contamination. *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). "The fact that the [prison] food occasionally contains foreign

objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Smith v. Younger*, No. 98-5482, 1999 U.S. App. LEXIS 20168, *6-7 (6th Cir. Aug. 9, 1999) (affirming district court's dismissal of plaintiff's Eighth Amendment claim based on the presence of a worm in her peanut butter).

In this case, Duerson does not allege that his prison diet is consistently nutritionally inadequate or that his food is regularly or even often infested with maggots.[5] Furthermore, it appears that the defendants made efforts to investigate the cause of the problem and fix it in a reasonably prompt manner. Under these facts, this Court does not find that Duerson has properly alleged a violation of his constitutional rights.

For the reasons set forth above, Duerson's complaint will be **DISMISSED** for failure to state a claim upon which relief may be granted.

The Court will enter an order that is consistent with this opinion.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Henderson County Attorney
        4414.008

---

[5] At the very end of his complaint, Duerson adds that the "food has had ants" in the past. However, Duerson very clearly limited this action to the October 20th incident: "I am filing a civil rights complaint against each person name[d] above because of a poorly prepared and unsanitary meal that I received on 10/20/05." Duerson never explains how these defendants were involved, if at all, with ants in his food. Moreover, none of the grievances that Duerson attached to his complaint show that he ever filed a grievance complaining about ants in his food. As such, the Court does not interpret Duerson's complaint to encompass any claim that his food has been contaminated with ants.